J-S60035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE LUIS GONZALEZ, JR. | |
| Appellant | No. 309 MDA 2014 |

Appeal from the Judgment of Sentence August 28, 2013
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000175-2013

BEFORE: OTT, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED DECEMBER 22, 2014**

Jose Gonzalez ("Appellant") appeals the judgment of sentence imposed on August 28, 2013, following his conviction for possession of a controlled substance with intent to deliver ("PWID"),[1] possession of a controlled substance,[2] and possession of drug paraphernalia.[3]  After careful review, we affirm.

The trial court summarized the trial testimony and procedural history as follows:

---

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(32).

The charges against [Appellant] stem from an incident that occurred on July 10, 2013 when several law enforcement officers presented themselves to 638 Oak Street, Apartment 4 in the City of Lebanon, Lebanon County, Pennsylvania for the purpose of executing an arrest warrant on [Appellant]. Upon entering the apartment Sergeant Jonathan Hess observed several people located inside the apartment, one of whom was [Appellant].

After obtaining permission from [Appellant's] mother, Wanda Gonzalez, who was the lessee of the apartment, Lebanon County Drug Task Force Detective Ryan Mong took part in the search of the specific bedroom in which [Appellant] was staying. During the search of [Appellant's] bedroom, Det. Mong recovered 17 total bags of heroin, drug paraphernalia and new drug packaging baggies which were located on the nightstand by the bed. Several packets were laying below the nightstand. A photograph taken by Det. Mong showed a heroin packet, a sandwich baggy containing new drug packages and apple zip baggies containing heroin which were all located on the nightstand. There was an additional bag containing heroin on the floor. The apple zip baggie contained a bundle of heroin. Det. Mong testified that a bundle typically contains 10 packets of heroin in a single bundle rubber banded together. Det. Mong went on to state that typically when someone buys in bulk, a bundle of heroin typically comes in packets of 10.

At trial, Det. Mong described Exhibits 12 and 13. Exhibit 12 was a large apple zip baggy containing a bundle of heroin and the single small zip baggie of heroin found at the nightstand. Exhibit 13 was two used or unused larger zip baggies. In addition, there was a sandwich baggy containing numerous amounts of small clear colored zip baggies. The single packet of heroin in Exhibit 13 was the same size, shape and appearance of the new drug packaging baggies that were recovered from [Appellant's] bedroom. Det. Mong showed the jury the 16 glassine packets of heroin and a small zip baggy of heroin. He pointed out that it was the same size, shape and appearance as the new sandwich baggies containing new drug packaging.

Sgt. Hess indicated that [Appellant] was taken into custody after an entire search of the apartment was conducted. Once in the patrol car, [Appellant] admitted to having items on his person for which he was going to be charged. A search of [Appellant] revealed synthetic marijuana, rolling papers and $34.00 in cash.

During the interview process, [Appellant] admitted to Det. Mong that the drugs and heroin found in the apartment belonged to him. [Appellant] stated the following in his written statement:

A. . . . [T]he cops came into took [sic] everybody to the ground. I came out back after looking out the back window. I laid on the ground. I left 20 bags dope [sic] in the room I was in. I was about to get high when the boys showed up and they found the stuff that all belongs to me. Nobody in the house except me knew it was there.

Given Det. Mong's training and expertise, he believed that the heroin was possessed by [Appellant] with intent to deliver. Det. Mong based this belief upon the following factors:

(1) There were 17 bags of heroin recovered from the apartment.

(2) There was new drug packaging that was the same size, appearance, and shape of the single heroin baggy that was located in the residence.

(3) There is no reason for a heroin user to have new drug packaging.

(4) The most common way to inject heroin is through the use of hypodermic needle shooting in a vein; no such injection paraphernalia was located.

(5) A typical heroin user does not have 17 bags of heroin. They are usually unemployed and looking for the next high.

(6) Typical heroin addicts are malnourished, usually have diseases, are in trouble with the law, don't take care of themselves, and rarely have enough money to be able to afford a residence. In addition, heroin users often appear drowsy, in and out of consciousness, delayed in speech, and unable to function at a high level. [Appellant] did not exhibit these characteristics.

Lebanon County Prison Counselor Tina Verna testified that part of her job requires her to ask every male inmate coming into the prison several questions which are recorded on a pre-printed form. On January 14, 2013, Counselor Verna questioned

[Appellant] as to whether or not he had a drug and alcohol dependency. [Appellant] responded yes to alcohol. [Appellant] stated that he was an alcoholic but did not mention anything about having a heroin addiction.

[Appellant] was found guilty on all counts and was sentenced on August 28, 2013 to a sentence within the suggested sentencing guidelines. [Appellant] filed timely Post-Sentence Motions on September 9, 2013 challenging the weight and sufficiency of the evidence.

Trial Court Post-Sentence Motion Opinion, January 3, 2014[4] ("Trial Court Opinion"), pp. 1-5 (record citations and capitalizations omitted).

On September 9, 2013, Appellant filed post-sentence motions raising: (1) a sufficiency of the evidence claim; (2) a weight of the evidence claim; and (3) a discretionary aspects of sentence claim. The trial court denied Appellant's post-sentence motions on January 3, 2014. Thereafter, Appellant filed a timely notice of appeal and complied with the trial court's order to file a statement of matters complained of on appeal.

Appellant raises the following issues for our review:

I. Did the Commonwealth fail to present sufficient evidence at trial to prove beyond a reasonable doubt that the Appellant possessed 0.72 tenths of a gram of Heroin with the intent to distribute?

II. Did the jury give too great a weight to the testimony of Detective Ryan Mong regarding his opinion that the 0.72 tenths of a gram of Heroin was possessed with the intent to distribute?

_____

[4] By Order dated March 13, 2014, the trial court forwarded the trial court file to this Court, noting that its January 3, 2014 opinion addressed Appellant's matters complained of on appeal. Accordingly, we will treat the trial court's January 3, 2014 opinion as its Pa.R.A.P. 1925(a) opinion.

III. Did the Sentencing Court err in sentencing Appellant to the top of the standard range for his minimum sentence at Action Number CP-38-CR-175-2013 and running that sentence consecutively to the sentence imposed at Action Number CP-38-CR-176-2013 when the Appellant had a prior record score of zero and only two (2) misdemeanor juvenile adjudications, and did the Sentencing Court consider improper facts when molding Appellant's sentence?

Appellant's Brief, p. 4.

Appellant first argues that the Commonwealth failed to prove that he committed the crime of PWID. **See** Appellant's Brief, pp. 10-12. Specifically, Appellant claims the Commonwealth failed to prove he had the intent to distribute the heroin. **Id.** He is incorrect.

When examining a challenge to the sufficiency of evidence, this Court's standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011).

The Crimes Code defines PWID as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

*****

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). "[I]t is well settled that intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case." *Commonwealth v. Daniels*, 999 A.2d 590, 595 (Pa.Super.2010). "When determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash." *Commonwealth v. Carpenter*, 955 A.2d 411, 414 (Pa.Super.2008) (internal quotation marks and citation omitted). "Expert opinion testimony is also admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." *Id.* (internal quotation marks and citation omitted).

Here, the trial court explained its rejection of Appellant's sufficiency of the evidence claim as follows:

> [Appellant] was charged with three counts. Count 1 charged [Appellant] with [p]ossessing [h]eroin with the [i]ntent to [d]eliver it. Count 2 charged [Appellant] with [p]ossessing [h]eroin. Count 3 charged [p]ossession of [d]rug [p]araphernalia. More than enough evidence was presented to support each count.
>
> Synthetic substances and rolling paper[s] were found on [Appellant's] person when he was arrested. [Appellant] admitted to police that they would find substances on his person that would eventually lead to criminal charges. Within [Appellant's] apartment, police found a large amount of heroin. This heroin was packaged in bags via which it could be easily delivered to other individuals. Additional bags were found in [Appellant's] apartment that could be used to package still more heroin. [Appellant] admitted to police that all of the heroin and drug paraphernalia in his apartment belonged to him.
>
> There are two possible reasons why [Appellant] possessed such a large amount of heroin and drug paraphernalia. The first explanation is that [Appellant] was a heroin addict. The second was that [Appellant] was selling heroin to others. To establish guilt on Count 1, the Commonwealth needed to convince the jury that the second explanation – that [Appellant] was selling heroin to others – was accurate. To do this, significant testimony was presented at trial with respect to the question of whether [Appellant] was in fact a heroin addict. Det. Mong described the appearance and behavior of most heroin addicts. More important, heroin is normally ingested through injection. No needles or other injection devices were found on [Appellant's] person or his apartment. If the above were not enough, the Commonwealth also presented evidence from a prison intake clerk that [Appellant] effectively denied being a heroin addict when he was admitted into the Lebanon County Prison.
>
> Based upon all of the evidence presented, the jury could have reasonably concluded that [Appellant] was not a heroin addict and that he possessed 17 bags of heroin with the intent to deliver those bags to other people.

1925(a) Opinion, pp. 8-9.

Viewed in the light most favorable to the Commonwealth as verdict winner, the trial court properly concluded that the evidence was sufficient to convict Appellant of PWID.

Appellant also claims the trial court erred in denying his motion for a new trial based on a weight of the evidence claim. *See* Appellant's Brief, p. 13. Specifically, Appellant claims the jury placed too much weight on Detective Mong's testimony because Detective Mong has always testified as an expert for the Commonwealth. *Id.* This claim lacks merit.

This Court's review of weight of the evidence claims is governed by the following standard:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa.2000) (internal citations, quotations, and footnote omitted).

Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice,[5] "such that right must be given another opportunity to prevail." *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997). Moreover, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Widmer*, 744 A.2d at 753. When reviewing the trial court's determination, this Court gives the gravest deference to the findings of the court below. We review the court's actions for an abuse of discretion. *Id.*

Simply stated, the jury's verdict in this matter implicitly illustrates that the jury found credible Detective Mong's testimony that Appellant possessed the heroin for delivery as opposed to personal consumption. The verdict also demonstrates that the jury found other evidence of guilt significant,

---

[5] This Court has explained the notion of "shocking to one's sense of justice" as follows:

When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

*Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super.2004) (internal citations and quotations omitted).

including the amount of heroin recovered and the packaging supplies seized. The trial court agreed with the jury's assessment in denying Appellant's post-sentence motion for a new trial based on the weight of the evidence. *See* Trial Court Opinion, pp. 8-9. Nothing about the verdict or the trial court's reasoning shocks the conscience. Appellant's weight of the evidence claim fails.

Finally, Appellant claims the trial court erred in sentencing him to the top of the standard range of the sentencing guidelines and by running the sentence consecutive to Appellant's sentence in another matter. *See* Appellant's Brief, pp. 14-15.

These claims raise challenges to the discretionary aspects of Appellant's sentence. "Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Allen*, 24 A.3d at 1064.

- 10 -

Here, Appellant filed a timely notice of appeal, and preserved his issues in a motion for reconsideration of sentence. Further, Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). **See** Appellant's Brief, p. 9. Accordingly, we now determine whether Appellant has raised a substantial question for review and, if so, proceed to a discussion of the merits of the claim. Pa.R.A.P. 2119(f); **Commonwealth v. Tuladziecki**, 522 A.2d 17 (Pa.1987).

In his Pa.R.A.P. 2119(f) statement, Appellant alleges that the trial court imposed an unreasonable sentence because (1) it decided to run the sentence consecutive to another sentence[6] and (2) it based the sentence solely on defendant's lack of remorse at sentencing. **See** Appellant's Brief, p. 9.

Initially, we note that Appellant's claim that his sentence is unreasonable because the trial court decided to run it consecutive to another sentence imposed does not raise a substantial question for our review. **See Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa.Super.2005) (a claim that the consecutive nature of sentences violates the Sentencing Code fails to raise a substantial question for review).

_____

[6] The other matter is Docket No. CP-38-CR-176-2013, an attempted murder conviction upon which the trial court sentenced Appellant to 20 to 40 years' incarceration, also on August 28, 2013.

As to his second argument, Appellant does not argue that the sentencing court relied upon any impermissible factors in sentencing, relied solely on the severity of the crime committed, or sentenced him beyond statutory limits. Instead, he alleges that the sentencing court focused solely on his lack of remorse at the sentencing hearing in imposing sentence. *Id.* To the extent Appellant's claim is that the trial court viewed his silence at sentencing as a lack of remorse and relied solely on that silence in sentencing, this claim does raise a substantial question for appellate review. *See Commonwealth v. Bowen*, 975 A.2d 1120 (Pa.Super.2009). We will therefore address the merits of Appellant's discretionary aspects of sentencing claim.

> If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Malovich*, 903 A.2d 1247, 1252-53 (Pa.Super.2006) (citations omitted).

Our review of the sentencing transcript reveals that the lower court did not abuse its discretion. Instead, the trial court imposed a sentence that was consistent with the protection of the public, took into account the gravity of the offense as it related to the impact on the life of the victim and

on the community, and considered the Appellant's rehabilitative needs, as required by 42 Pa.C.S. § 9721(b).

At sentencing, the trial court explained it considered the presentence investigative report,[7] the facts presented at trial, and all the circumstances surrounding the crime made out to the court. N.T. 8/28/2013, pp. 14-15. The court then sentenced Appellant to a standard range sentence within the statutory maximum. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super.2010) ("[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."). We find no abuse of discretion.

Given the foregoing, Appellant's claims that the trial court erred in running his sentence consecutive to another sentence and relied solely on his lack of remorse in sentencing fail.

Judgment of sentence affirmed.

---

[7] We note that, where a sentencing court had the benefit of a presentence investigation report, we can assume the sentencing court was aware of relevant information contained therein and weighed that information along with any mitigating factors. *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super.2010).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2014